Thurman, J.
The statute of 1831, entitled, “ An act providing for the erection of public building,” enacts, that there shall be erected and finished, in each county within this Estate, whenever the commissioners of the county may deem it necessary, a good and convenient court-house, a strong and sufficient jail or prison for the reception or confinement of prisoners and criminals; also, one or more convenient fire-proof buildings, in some convenient place or places near the court-house, in which shall be kept the offices of the clerk of the Supreme Court, Court of Common Pleas, sheriff, recorder of deeds, county auditor, and county treasurer; provided, however, that the commissioners may, at their discretion, provide and finish one or more suitable rooms within the walls of the court-house, or other building, for the use of the whole, or a part of the officers aforesaid; and the commissioners may assign such room or rooms to the sole and exclusive use of such officers as they may deem expedient.” Swan’s Stat. 740.
By the fifteenth section of the act establishing boards of county commissioners, passed March 5, 1831, it is provided, “ That, until pro per buildings are erected at the place fixed on for the permanent seat of justice in any county, it shall be the duty of the county *30 commissioners to provide some suitable place for holding the courts of such county.
It is evident from these statutes that the right to determine when a court-house shall be erected by a county is vested in its commissioners. They must provide a suitable place in which to hold the courts, but it need not be a court-house built expressly for the purpose. They may rent a room or building to be used by the courts, until the time arrive when, in the exercise of a sound discretion, they resolve to erect, and do erect, a court-house. The same thing may be said of the public offices. In relation to these, the section first above quoted enacts that they shall be erected whenever the commissioners may deem it necessary, and the proviso declares that the commissioners aforesaid may, at their discretion, provide and finish one or more suitable rooms within the walls of the courthouse, or other building, for the use of the whole, or a part of the officers aforesaid; and the commissioners may assign such room or rooms to the sole and exclusive use of such officers as they may deem expedient.
*Did the act of January 28, 1851, 49 Ohio Local Laws, 130, deprive the commissioners of Hamilton county of this discretion ? We think not. It simply authorized them to erect public buildings, without destroying or limiting their power, conferred by the general laws aforesaid, to determine when they should be erected. It is clear, therefore, that if no contract had been made for the erection of a court-house, and the case stood upon the provisions of law alone, we could not properly order a mandamus to be issued, commanding a court-house or public offices to be built. To do so would be to usurp the functions of the county commissioners and deprive them of the discretion vested in them by law. We are not asked to grant a mandamus requiring the commissioners to provide suitable rooms for the courts and county officers. That would’present quite a different question from the question whether we can command them to build a court-house and public offices. But were we so asked, no sufficient ground is laid for the application. There is no statement in the relator’s affidavit or proofs that rooms for the courts and county officers are not provided. The only allegations that touch this point, even remotely, are contained in the affidavit, which states that the court-house has been burned, and that there is not at this time any sufficient, safe, depository for the public books and papers of the county, or for the keeping of the records of the *31 courts. This may all be true, and yet no default on the part of the commissioners exist. It is not averred that they refuse or neglect to provide court-rooms, a jail and public offices. It is not even said that they refuse or neglect to build them. For all that appears to us, they may be industriously preparing to do so. The whole ground of complaint in the affidavit is, that they refuse to build a particular court-house and jail. It may be admitted that at the date of the affidavit the court-room and offices in use were not safe depositories of the public records, but where is the showing that this originates in a dereliction of duty on the part of the commissioners ? There is no such testimony, and we can not presume it.
*And as to jail, it is not stated that there is no jail, or an insufficient one, in the county; and if such is the fact, and the commissioners refuse or neglect to provide one, we must have the evidence before us in order to enable us to act.
Does the contract with the Cooks alter the case? "We say nothing here upon the question argued at bar, “ whether that contract is valid.” Let its validity be assumed, for present purposes, what claim does it give the relator to the writ he seeks? If any individual right had been violated by its breach, it is the right of the Cooks, and they ask for no mandamus. "Were they to do so, it would possibly be a sufficient answer to say that they have no right under the contract to any specific thing; that their whole compensation is to be in money; and that an action at law would afford them a plain and adequate mode of redress. But it is unnecessary for us to say what we would do were they the relators. It is sufficient that Black has no right to prosecute for them. The only ground upon which he can claim to stand is that of the public interest. But how do we know that the'interest of Hamilton county requires the erection of the buildings contracted for? How can we say that her interest will not be promoted by putting an end to the undertaking, and paying the damages consequent upon such a course ? And who has made us the judges of this question-of her interest? But it is said that this is to sanction a repudiation of the contract by the commissioners. It is not so. It is only to say that mandamus is not the proper remedy. "When a court of equity refuses to decree a specific execution of a personal contract, it gives no sanction whatever to its violation. It merely says, this is neither the proper forum nor the proper mode of relief. And so say we in the present case. When the general assembly shall have deprived the com *32 missioners of Hamilton county of their discretion, and commanded them to proceed with the erection of the buildings contracted for, a case will be made for mandamus if the command be disregarded. Until this take place, the decision of the question, whether these particular buildings can be constructed, must *rest in the
sound discretion of the commissioners and the people who elect them. In saying this we do not mean to decide that there is no case in which a right to a writ of mandamus may not grow out of a contract made in pursuance of statutory provision. We only mean to say that this is not such a case ; that the commissioners in question have not been deprived of their discretion; and that, although that discretion is not an arbitrary one, its mere abuse, if such abuse exists, does not authorize us to exercise the discretion ourselves by issuing a writ of mandamus. It is too well settled, by reason and authority, to admit of denial, that the lawful discretion, vested in an individual, officer or corporation, can not be destroyed, or limited by the writ of mandamus. And it -is equally well settled, that before the writ will go to either, a plain dereliction of duty must be established. Ang. & A. on Corp. 656, and cases there cited. Id. 662, 663 and 664, and cases there cited; 12 Ohio, 57; 1 Morris (Iowa), 35 ; 6 B. & C. 181; 9 D. & R. 309.
We see no sufficient ground for the present application, and it is therefore refused.